## HATAWAY v. F. STRAUSS & SON, Inc. *
### No. 4879.

Court of Appeal of Louisiana. Second Circuit.
Jan. 9, 1935.

Hawthorn, Stafford & Pitts, of Alexandria, and Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

Frank H. Peterman, of Alexandria, for appellee.

MILLS, Judge.

Defendant, a wholesale produce dealer, at Monroe, La., on the 16th day of December, 1932, sent its truck and trailer, driven by a negro employee named Watson, to deliver an order to the store of L. W. Lawrence, located on the main street of Pineville. The truck, at about 8 o'clock at night, coming from the west toward Alexandria, pulled in to the curb on its right in front of the Lawrence store. It parked in line with, and with its wheels practically against, the curb. The driver did not pull up quite far enough for the trailer to straighten out, its right front wheels being close to the curb in proper position, but with the right back wheel between 2½ and 3 feet from the curb. This is a disputed point. Mr. Lawrence, who was on the sidewalk at the time, says:

"Well, the truck and half the trailer was parked perfectly but the hind end of the trailer stuck out a little bit. * * *

"I imagine it was a little further out than it should have been, two, two and a half feet. * * *

"His drive wasn't quite far enough to clear the trailer like it should have been."

L. W. Lawrence, Jr., also saw the truck drive up. He testifies:

"Yes, sir. I saw it when it drove up. I was in the station when it drove up and I walked over into the store.

"Q. And the truck was along the curb and the trailer was kind of angling a little bit out? A. Yes, sir."

We quote this testimony because defendant contends that its trailer was properly parked and that its position after the collision was due to its being knocked away from the curb. We think it probable that to some extent this is true, but, from the testimony of the disinterested Lawrences, we are satisfied that the trailer was not parked in conformity with section 1 of Ordinance 255 of the city of Pineville, which provides that it shall be unlawful to park any vehicle except "* * * with the right side of the vehicle parallel to and not more than one foot from the curb."

The street in question is the main thoroughfare and business street of Pineville, traversed not only by its own traffic but by all cars going and coming to and from the west into the larger city of Alexandria just across Red river to the east. It is 36 feet wide, made up of a center strip of 18 feet put down by the state, and two strips along the sides of 9 feet each put down by the municipality. A black line separating the 18-foot center from the side strips has no traffic significance. This street is maintained as a "White Way," which means exceptionally lighted. In addition, stores and filling stations on each side contributed to its illumination.

Though the day had been drizzly, the night was clear. About noon that day E. R. Creed, a mechanic 27 years of age, residing 14 miles west of Pineville on the Winnfield road, picked up plaintiff, Hataway, in Pineville, and, as he says, "fooled around for a little while." This "fooling around" seems to have consisted of buying some whisky from a taxi driver and staging a fight between this driver and Hataway, in which the latter received a severely cut lip. The pair then drove back to Creed's home, and that night, in Creed's car, started back to Alexandria. Hataway sat on the front seat beside Creed, who was driving. After entering Pineville on Main street, they approached defendant's parked truck and trailer at a speed of about 15 or 20 miles per hour. They were on their right side of the street facing the headlights of a steady stream of traffic going the other way. Creed says that he did not see the trailer until within 10 or 12 feet of it. Hataway saw it at a distance of 15 or 20 feet, and yelled a warning to Creed too late to avert the collision. The crash projected Hataway through the windshield. He suffered a clean cut on the chin about 2 inches long, another of about the same length on his cheek, and a smaller cut on the ear. His wounds were promptly dressed and sewed up. They have healed perfectly, but have left resulting scars on chin and cheek.

In his petition, Hataway asks $2,500 for disfigurement and nervous shock; nothing for loss of time or pain and suffering.

In the lower court he was given judgment for $250, from which defendant has appealed. Plaintiff has answered, praying that the judgment be increased to the amount prayed for.

The acts of negligence alleged in the petition are that defendant, on a dark and rainy night, parked the truck, without lights, in

such a way that the trailer projected several feet into the main part of the street, violating the laws of the state, of Pineville, and the ordinary rules of safety.

The night was clear and not dark and rainy. It is also well established that the trailer was properly equipped with lights, which were burning.

The only remaining possible act of negligence is the position in which the trailer was parked. Three things clearly stand out: This was a much-traveled, brilliantly lighted street of the unusual width of 36 feet. There was ample room for Creed, had he seen the trailer in time, to have passed safely around it. There was nothing to obscure his view of this large object. A mere statement of this situation demonstrates the gross negligence of Creed.

The testimony of witnesses present at the time shows that Hataway was drunk, but does not satisfy us that Creed was in the same unfortunate condition.

▪ In certain situations, it is the duty of a guest or passenger to keep a lookout and warn his driver of danger. We do not think this obligation extends so far as to require a passenger on a brightly lighted street of ample width to observe and call the attention of the driver to plainly apparent cars parked along the way. A guest so doing would not soon again be invited to ride. He would be more of a nuisance than a protection. Delaune v. Breaux, 18 La. App. 609, 135 So. 253.

▪▪ We do not find that Hataway, even though intoxicated, failed in any legal duty or was himself guilty of any contributory negligence. Nor can the negligence of Creed be imputed to him.

▪▪ The learned trial judge, in a well-considered written opinion, with which we agree as to the findings of fact, held that defendant was negligent in the manner of parking the trailer, and that this negligence was the proximate cause of the accident. We do not agree with the latter conclusion. Nor do we find that it was an act of ordinary negligence for defendant's driver to park his trailer, on a street 36 feet wide, with its rear 2½ feet from the curb. The left rear wheel of the trailer was between the curb and the black line 9 feet away, but within a few inches of the line. The body of the truck, as shown by photographs, does not overhang the wheels, but does project 2 or 3 feet to the rear of them. It, then, did project possibly 2 feet into the 18-foot center strip. But this did not block traffic, as 25 feet of space still remained.

Plaintiff does not contend that he was crowded into the trailer. On an unlighted rural road or a dark and narrow street, a different situation would be presented. The test of negligence is whether or not defendant's driver acted as a reasonably prudent man would in the same circumstances.

It is testified to by the senior Lawrence that, judging from the marks on its rear, he thinks the trailer would have been struck even if parked jam-up against the curbing. The testimony and photographs show that the trailer was struck somewhere about the location of its license plate, which appears bent in the picture. The center of this license plate is more than one-third of the width of the trailer body from its left side. The body of the truck is shown to be about 6 feet wide. We figure from the photograph that it was struck about 2½ feet from the left side. The left rear wheel was parked inside of the black line. The body of the truck, in the picture, projects about 3½ feet (estimated in the testimony to be 4 feet) beyond the center of the rear wheels. It does not overhang. The truck was angling 3 feet in its length of 15. While we are not enough of a mathematician to figure this with exactness, we do not believe that the rear left corner of the trailer projected more than 2 feet over this line. The line being 9 feet from the curb, this would put the left corner of the truck 11 feet away. If parked one foot from the curb, it would have been 7 feet away. It was then 4 feet too far out, which indicates that Creed would have cleared the truck if properly parked.

If, then, defendant is to be held liable, it is because the driver violated the city ordinance requiring vehicles to be parked parallel with, and within one foot of, the curb.

▪ It is too well settled to require citation that the violation of a safety ordinance is negligence per se, but that it is not actionable, unless it becomes a proximate cause of an ensuing accident.

We are not sure that this is primarily a safety ordinance, as it serves another purpose in preventing an undue appropriation of the street space by parked cars.

Proximate cause is difficult to define. It is one without the intervention of which the accident would not have occurred. This definition is not complete, for a person may have suffered an injury on a certain street corner that he would have avoided had he been somewhere else. Yet his mere presence in a certain place is not necessarily a proximate cause of an accident occurring there.

The doctrine of comparative negligence is not recognized in our law or jurisprudence. Unquestionably, the negligent act of Creed in failing to observe the trailer which, by the exercise of the slightest care, he should have seen, does not relieve defendant as to the guest if its driver was also negligent and this negligence was a proximate cause of the accident.

We do not believe the presence of this large object looming up ahead and taking up not over one-third of a well-lighted, 36-foot street was in any legal sense a cause of this collision. The cause was Creed's failure to look or to see. The position of the truck in no way interfered with his view. The slight angle in which it was parked enlarged its aspect and made it more prominent.

Proximate cause is thus defined in the Restatement of the Law of Torts, § 431: "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent, * * * this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor as well as an actual factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense in which there always lurks the idea of responsibility, rather than in the so called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes."

So, in the present case, the substantial cause of this collision was the gross negligence of Creed in driving so carelessly and heedlessly through a busy street that he failed to see, until within 10 or 12 feet of it, a truck and trailer parked along the curb where parked vehicles are reasonably expected to be found.

Our courts have consistently followed this rule as laid down in the restatement, Odom v. Schmidt, 52 La. Ann. 2129, 28 So. 350, Campbell v. Haas, 2 La. App. 753, where plaintiff's car was parked on the left-hand or wrong side of the road.

In Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194, plaintiff's car had gone dead in the middle of the street.

In Blackburn v. Louisiana Ry. & Nav. Co., 144 La. 520, 80 So. 708, it is held that, where an engine runs over a man sitting on the track, the failure of the engineer to see him in time is the proximate cause of the accident.

In Parlongue v. Leon, 6 La. App. 18, plaintiff recovered, though his car was stopped on the road in line of traffic.

In Roberts v. Eason, 6 La. App. 703, the proximate cause is found to be the failure of the driver and guest to see a truck parked in the street in violation of a city ordinance.

In Sexton v. Stiles, 15 La. App. 148, 130 So. 821, 827, we find: "The courts of this state have uniformly held that it is negligence per se for one to park a car on the highway without lights after dark, when an accident is caused by said failure. However, if the absence of the lights is not the proximate cause of the accident but same is brought about through the carelessness and recklessness and lack of precaution on the part of the one driving into the parked car, then the courts have refused to hold the owner of the parked car liable."

The case further holds: "His vision was either imperfect or he was not looking at the road ahead of him; either of which would bar his right to recover. The absence of a tail-light from the truck was not the proximate cause of the accident; but the failure of the plaintiff to keep the proper lookout ahead was the cause of the accident."

The case further holds that cars parked improperly and illegally along the highway are to be expected, and that a driver cannot proceed blindly, relying upon its being clear as required by law. F. Strauss & Son v. Childers (La. App.) 147 So. 536; Feight v. Rock, et al. (La. App.) 155 So. 303; St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223; 11 S. Ct. 554, 35 L. Ed. 154.

Applying the law to the facts in this case, we conclude that the negligence of Creed, which would in any event bar his own recovery, cannot be imputed to his guest; but that defendant is only liable to Hataway for actionable negligence on its part, which is a proximate cause of his injury, that the negligence per se of defendant's driver in parking the trailer in violation of the ordinance was not such a proximate cause, and that therefore plaintiff's demand must be rejected.

For the reasons assigned above, the judgment appealed from is reversed and plaintiff's demand rejected at his cost.